UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNY BOURGEOIS,<br><br>    Plaintiff,<br><br>v.<br><br>PENTEC HEALTH, INC.,<br><br>    Defendant. | Case No. 23-cv-06375-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO REMAND**<br><br>Re: Dkt. Nos. 43, 58 |

Pending before the Court is a motion for summary judgment filed by Defendant Pentec Health, Inc., Dkt. No. 43, and a motion to remand filed by Plaintiff Penny Bourgeois, Dkt. No. 58. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment and **DENIES** the motion to remand.

## I. BACKGROUND

The parties are familiar with the facts of this case, and the Court includes them here only as relevant to the pending motion. The following facts are based on the evidence viewed in the light most favorable to Plaintiff as the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor").

### A. Factual Background

The parties do not explicitly explain the nature of Defendant's business, but it appears, at least in part, to employ registered nurses to care for patients and train other nurses across the United States. *See* Dkt. No. 1-1, Ex. A ("FAC") at ¶¶ 2, 6–8. Defendant is incorporated under the

laws of the State of Pennsylvania and has its principal place of business in Boothwyn, Pennsylvania. *See* Dkt. No. 43-2 ("Gagnon Decl.") at ¶ 4. Plaintiff is a registered nurse with 30 years of experience. *See* Dkt. No. 52-1 ("Bourgeois Decl.") at ¶ 2. Defendant hired Plaintiff in 2016 as a traveling nurse on Pentec's "travel team." *See* Dkt. No. 43-3 ("Hiidel Decl.") at ¶ 4. Plaintiff has been a resident of Texas since she was hired. *Id.*; *see also* Bourgeois Decl. at ¶ 13. However, in her role at Pentec she travels to other states to provide direct care as a nurse and to train other Pentec nurses. *See* Hiidel Decl. at ¶¶ 4–5; Bourgeois Decl. at ¶ 3. She has worked in more than a dozen states, including California. *See* Gagnon Decl., Ex. A.

As relevant here, Plaintiff states that she "perform[ed] substantial nursing duties in the State of California from January 15, 2019, until October 29, 2022." *See* Bourgeois Decl. at ¶¶ 3–4. According to Plaintiff, Pentec did not track her actual hours worked during this timeframe. *See id.* at ¶¶ 11–12. Still, Plaintiff states that she regularly worked more than eight hours per day and 40 hours per week while in California, but was not paid overtime for these additional hours. *See id.* at ¶¶ 5–6. Plaintiff has estimated the amount of time she worked inside and outside of California from 2019 to 2022. *See id.* at ¶¶ 12–19; *see also* Dkt. No. 52-4, Ex. 3. Plaintiff divided her calculations into "California Hours" and "Non-California Hours," but did not provide a further breakdown of her time. *See* Dkt. No. 52-4, Ex. 3. She estimates that she worked more than 300 full days in California, and that in 2019, 2020, and 2022, there were over 100 weeks when she worked most of her work hours in California. *See id.* Plaintiff appears to acknowledge that she did not work in California at all in 2021 until mid-August of that year. *See* Dkt. No. 52 at 1; *see also* Dkt. No. 52-4, Ex. 3. Plaintiff has not been assigned to work in California since October 2022. *See* Hiidel Decl. at ¶ 5. Defendant asserts that it no longer provides nursing services in California and has no intention to do so moving forward. *See id.*

In December 2022, Defendant wrote to Plaintiff to explain that it was reclassifying her position from salaried, exempt from overtime to an "hourly position that is eligible for overtime," effective December 11, 2022. *See* Bourgeois Decl. at ¶ 7; Dkt. No. 52-2, Ex. 1; Dkt. No. 52-3, Ex. 2. Previously, Pentec had told Plaintiff that her wages would be paid by a fixed salary, without regard for the number of hours she worked. *See* Bourgeois Decl. at ¶ 11. However, the letters

2

instructed Plaintiff how to track her work accurately moving forward, including time spent traveling as well as meal breaks, particularly when working in California. *See* Bourgeois Decl. at ¶ 7; Dkt. No. 52-2, Ex. 1; Dkt. No. 52-3, Ex. 2. The letters also instructed Plaintiff to take full meal and rest breaks. *Id.* Defendant ultimately calculated that Plaintiff was entitled to 576 hours of back overtime pay from the last three years, and asked Plaintiff to confirm. *See* Bourgeois Decl. at ¶ 8. Plaintiff responded that she worked several thousand hours of overtime and had missed many meal breaks. *See id.* at ¶ 9. In March 2023, Defendant made a direct back-wage payment to Plaintiff for a net payment of $28,159.48 from gross wages of $46,403.25. *See id.*

### B. Procedural Background

Plaintiff initially filed this action in Alameda Superior Court in May 2023. *See* Dkt. No. 1 at ¶ 2. Plaintiff filed an amended complaint in September 2023, and Defendant then removed the case. Dkt. No. 1. The FAC alleges six causes of action for violations of California law. *See* FAC. Specifically, Plaintiff alleges that Defendant violated California Labor Code and relevant Wage Orders by failing to pay her overtime and for all hours worked; failing to provide required meal periods, rest breaks, and accurate wage statements; and that Defendant violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*

Defendant has filed a motion for summary judgment. Dkt. No. 43. Plaintiff, in turn, has filed a motion to remand—rather than dismiss—her UCL claim if the Court finds that it lacks equitable jurisdiction over it. *See* Dkt. No. 58.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence

1  or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997),

2  *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

3        The moving party bears the initial burden of identifying those portions of the record that

4  demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

5  U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "go beyond the

6  pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and

7  admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See*

8  *id.* at 324 (quoting Fed. R. Civ. P. 56(e) (amended 2010)). The nonmoving party must show more

9  than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,

10  387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must

11  come forth with evidence from which a jury could reasonably render a verdict in the non-moving

12  party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make

13  this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477

14  U.S. at 323. If a court finds that there is no genuine dispute of material fact as to only a single

15  claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed.

16  R. Civ. P. 56(a).

### III.  DISCUSSION

#### A.  Extraterritorial Application of California Labor Laws

Defendant urges that California law does not apply to Plaintiff as a nonresident employee working for a nonresident employer. *See* Dkt. No. 43 at 16–24. As such, Defendant asserts that Plaintiff's claims fail as a matter of law. *Id.* Both the Ninth Circuit and California Supreme Court have recognized that some level of extraterritorial application of California law is permissible. *See Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1137–38 (9th Cir. 2021) (holding that California overtime laws applied to California resident's work outside of the state for a California employer); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1200 (Cal. 2011) (holding that California overtime laws applied to "full days and weeks of work performed [in California] by nonresidents"). The California Supreme Court has even explicitly stated that "[t]he state's power to protect employees within its borders is not limited by whether the worker might be a nonresident or might be

4

1    employed by a nonresident entity." *See Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 773 (Cal.
2    2020); *see also Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 758 (Cal. 2020) ("[B]eing a
3    nonresident does not exclude an employee from the state's labor protections.").

4    Nevertheless, Defendant appears to suggest that there is—or should be—some bright line
5    rule that California labor laws do not apply to nonresident employees working for nonresident
6    employers, even if they perform work within California. *See* Dkt. No. 43 at 18–21. Defendant
7    urges that "California cannot have it both ways," and if "California's Labor Code applies to work
8    California residents perform outside of California for California companies, then work that
9    nonresidents, like Plaintiff, perform in California for non-California companies must be governed
10   by the law of the employee's and/or the employer's state or residence." *See id.* at 19. But neither
11   the California Supreme Court nor the Ninth Circuit has adopted such an all-or-nothing approach.
12   "There is no single, all-purpose answer to the question of when state law will apply to an interstate
13   employment relationship or set of transactions." *Ward*, 9 Cal. 5th at 752. Rather, to determine
14   whether California law applies, "each law must be considered on its own terms" and in light of the
15   circumstances of any given case. *Id.* The California Supreme Court has explained that this is
16   especially true "[i]n our modern, interconnected economy," where "many legal transactions and
17   relationships span multiple jurisdictions." *Id.* at 750.

18   Defendant makes no effort to parse Plaintiff's claims in this individualized way. It does
19   not cite or address the actual language or legislative history of any of the specific Labor Code
20   provisions. This alone is reason to deny the motion for summary judgment.

21   Instead, Defendant appears to suggest that a California Supreme Court case, *Sullivan v.*
22   *Oracle Corp.*, is somehow dispositive. In *Sullivan*, the court held that California's overtime
23   provisions apply to nonresident plaintiffs' claims for compensation for work performed in
24   California for California employers. 51 Cal. 4th at 1197–1206. The plaintiffs in *Sullivan* were
25   "instructors" who trained Oracle customers in the use of the company's products. *Id.* at 1194–95.
26   The plaintiffs "worked mainly in their home states but also in California and several other states."
27   *Id.* at 1195. Over the course of three years, one plaintiff worked in California for 74 days, one
28   plaintiff for 110 days, and the other for 20 days. *Id.*

1    Despite Defendant's repeated suggestion otherwise, the California Supreme Court in
2    *Sullivan* did not preclude the application of California law to non-California employers. Rather,
3    because Oracle was based in California, the court simply did not have to reach this issue. *See id.*
4    at 1201–02. The court left open the possibility that California's interests "may or may not be
5    sufficient to justify choosing California law over the conflicting law of the employer's home
6    state." *Id.* at 1201; *see also id.* at 1205 ("[A] company that conducts business in numerous states
7    ordinarily is required to make itself aware of and comply with the law of a state in which it
8    chooses to do business."). The court further explained that "to the extent other states have
9    legitimate interests in applying their own wage laws to their own residents for work performed in
10   California, the applicable conflict-of-laws analysis takes those interests into account." *Id.* at 1202.

11   Here, Defendant concludes—with little analysis—that Texas and Pennsylvania have strong
12   interests in applying their laws here because Plaintiff is a resident of Texas and Defendant is a
13   resident of Pennsylvania. *See* Dkt. No. 43 at 20–23. Although such interests may be relevant,
14   they are not conclusive. And Defendant offers little detail about the nature or scope of Plaintiff's
15   work in either Texas or Pennsylvania as compared to California. Defendant notes that Plaintiff
16   worked in Pennsylvania, but it makes no effort to quantify that time. *See* Dkt. No. 43 at 8;
17   Gagnon Decl., Ex. A at 18–19. As for Texas, Defendant draws several assumptions about the time
18   that Plaintiff spent working in or traveling from Texas. *See* Miller Decl. at ¶¶ 4–11. From those
19   extrapolations, Defendant suggests that Plaintiff actually spent more time working in Texas than
20   in California from 2019 to 2022. *See id.* Defendant posits that Plaintiff "started, ended, or
21   worked" in Texas on at least 368 days and worked in California no more than 326 full days. *See*
22   Dkt. No. 43 at 9. But without more factual detail, the Court cannot conclude that Defendant's
23   estimates are correct, or even assuming that they are, that Texas or Pennsylvania law should
24   therefore apply rather than California law. Defendant's analysis is at best incomplete.

25   The California Supreme Court has also cautioned against interpretations of California law
26   that could leave interstate workers without any protections. In *Ward*, for example, the court
27   considered whether California law about wage statements, Cal. Lab. Code § 226, should apply to
28   pilots and flight attendants who resided in California but worked for an airline based outside

California. *See Ward*, 9 Cal. 5th at 740. The court held that whether plaintiffs were "entitled to California-compliant wage statements depend[ed] on whether their principal place of work [was] in California." *Id.* This test, the court explained, was "certainly satisfied when the employee spends the majority of his or her working hours in California." *See id.* at 754. But the plaintiffs in *Ward* performed most of their work *outside* California. *See id.* at 740. The court recognized that many transportation workers, like the plaintiffs, would not "perform the bulk of their work in any one state." *Id.* at 754. The court expressed concern that "because these employees work in many jurisdictions, they would receive the protections of none." *Id.* The court therefore rejected the defendant's suggestion that the inquiry should end if a plaintiff does not work the majority of his or her time in California. *Id.*

The California Supreme Court closely scrutinized the language and legislative history of § 226. Section 226 "regulates the information an employer must give its employees when it pays wages." *See id.* at 732. It requires, among other things, that wage statements contain "the pay period, hours worked, applicable hourly rates, gross and net wages earned, and any deductions taken." *Id.* It is intended to assist employees in determining whether they were properly paid. *See id.* at 752–53. The *Ward* court noted that, unlike overtime pay, § 226 "does not operate at an hourly, daily, or even weekly level." *Id.* at 753. Rather, it contemplates that an employee will receive a single wage statement *per pay period*, regardless of the number of jurisdictions an employee may have worked in during that timeframe. *Id.* at 753–54, & n.8. The California Supreme Court thus concluded that, in addition to applying to employees who worked the majority of their time in California, the statute also would "apply to workers whose work [was] not performed predominantly in any one state, provided that California [was] the state that ha[d] the most significant relationship to the work" during a given pay period. *Id.* at 755. For example, the court said that § 226 would apply "if the worker perform[ed] some work here and [was] based in California, meaning that California serve[d] as the physical location where the worker present[ed] himself or herself to begin work." *Id.* For pilots and flight attendants, the court reasoned that § 226 would apply if they had a "home-base airport" in California. *Id.* at 760. Critically, the court expressly *rejected* a test that was based on the employee's residence or the employer's location,

7

and focused instead on the nature of the work. *See id.* at 758–59.

According to Plaintiff, "[t]here were scores of bi-weekly pay periods" from 2019 to 2022 in which "most of [her] work hours were within the State of California." *See* Bourgeois Decl. at ¶ 15. The Court recognizes that this case may approach the outer bounds of when California law could apply, since it involves nonresident employees, working for nonresident employers, who are only temporarily in California for days at a time. *See* Gagnon Decl., Ex. A. As the California Supreme Court has cautioned, "California law might not apply to nonresident employees of out-of-state businesses who enter California temporarily during the course of the workday." *Sullivan*, 51 Cal. 4th at 1199; *see also Ward*, 9 Cal. 5th at 751 (explaining that it has not held "that California's employment laws *always* apply to every minute or hour of work performed in this state") (emphasis in original). The California Supreme Court eventually may have the occasion to provide a concrete answer to this question, but it has not done so yet. Nevertheless, viewing the evidence in the light most favorable to Plaintiff, as the Court must at this stage, there appear to be at least some pay periods in which Plaintiff's principal place of work was California, and the requirements of at least Cal. Lab. Code § 226 would therefore apply.

Lastly, assuming California law does apply, Defendant asks the Court to find that it only applies to full days or weeks of Plaintiff's time. *See* Dkt. No. 43 at 23–24; *see Sullivan*, 51 Cal. 4th at 1201 (finding "the applicable conflict-of-laws analysis does require us to apply California's overtime law to *full days and weeks* of work performed here by nonresidents"). It appears that the California Supreme Court has not addressed this question directly either. And here too, neither Defendant nor Plaintiff has provided the kind of rigorous claim-by-claim analysis needed to determine the extent to which California law applies to this case. At least in *Sullivan*, the court limited the application of California's overtime laws to "full days and weeks of work performed" in the state. *See Sullivan*, 51 Cal. 4th at 1201. Plaintiff's suggestion that California's labor laws could apply to partial days appears inconsistent with this aspect of *Sullivan*, at least as it pertains to overtime laws, and in any event, seems administratively unworkable. Still, the Court is not inclined to make sweeping pronouncements of law without an adequate and well-supported record, which is missing here.

\*   \*   \*

In short, whether California law should apply is a highly fact-specific inquiry, and the Court finds that there is at least one factual dispute that precludes summary judgment here. The Court therefore **DENIES** the motion on this basis.

### B.   Labor Code § 558.1

Defendant next argues that Plaintiff's cause of action under Cal. Lab. Code § 558.1 should be dismissed because Plaintiff has not identified an individual that has allegedly violated any wage and hour laws. *See* Dkt. No. 43 at 25–26. Under § 558.1:

> Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.

Cal. Lab. Code § 558.1. Plaintiff responds that it is bringing this claim against Pentec as the "employer" under this statute.[1] *See* Dkt. No. 52 at 17–18. Defendant asserts that, despite the plain language of § 558.1, it does not apply to "employers," at least not where Plaintiff has also brought direct causes of action for violations of the Labor Code. *See* Dkt. No. 56 at 12–13. Although this claim is perhaps redundant, Defendant provides no authority requiring the Court to dismiss it. *Cf. Seviour-Iloff v. LaPaille*, 80 Cal. App. 5th 427, 444–45 (Cal. Ct. App. 2022), *as modified on denial of reh'g* (July 21, 2022) (noting that liability under § 558.1 "may not be necessary if the employee is able to collect his or her unpaid wages from the employer"). The Court **DENIES** the motion on this basis.

### C.   UCL Claim

#### i.   Adequate Remedy at Law

Defendant next argues that the Court should dismiss Plaintiff's UCL claim because

---

[1] To the extent Plaintiff suggests that she may still identify an individual for purposes of this claim, *see* Dkt. No. 52 at 18, she has not sought leave to amend her complaint. Without deciding the issue since it has not been squarely presented, the Court notes that it is unlikely to allow such an amendment at this late stage.

9

Plaintiff has an adequate remedy at law—namely, her Labor Code violations.[2]  *See* Dkt. No. 43 at 13–16.  "[T]he UCL provides only for equitable remedies."  *Hodge v. Superior Ct.*, 145 Cal. App. 4th 278, 284 (Cal. Ct. App. 2006).  "In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy."  *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022).

Plaintiff suggests that notwithstanding *Guzman*, she lacks an adequate legal remedy because her Labor Code claims will not compensate her for unpaid wages from January through November 2019 due to the applicable three-year statute of limitations.  *See* Dkt. No. 52 at 20.  The UCL, Plaintiff points out, has a four-year statute of limitations, which would allow her to recover restitution for this timeframe.  *Id.* (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 174–79 (Cal. 2000)).  But the Ninth Circuit has rejected this argument, explaining that federal "equitable relief must be withheld when an equivalent legal claim would have been available but for a time bar."  *Guzman*, 49 F.4th at 1312 (citing cases).

Plaintiff also suggests that injunctive relief, which is unavailable under the Labor Code, is necessary here because she continues to work for Pentec and the company could decide to send her to California at any time in the future.  *See* Dkt. No. 52 at 21.  Defendant argues that it no longer provides services to California and has no intention of doing so in the future.  *See* Hiidel Decl. at ¶ 5.  Plaintiff, for her part, has not worked in California since October 2022.  *See* Miller Decl., Ex. A at 51.  Thus, Defendant urges, there is no basis to provide any forward-looking injunctive relief.  *See* Dkt. No. 43 at 15.  Plaintiff offers no evidence to contradict this point.  She vaguely suggests that Defendant may continue to violate the law following this lawsuit, but offers no basis on which to conclude that Defendant operates in California any longer.  The Court accordingly finds that it lacks equitable jurisdiction over Plaintiff's UCL claim and **GRANTS** the motion on this basis.

---

[2] To the extent Defendant also argues that the UCL cannot apply to it because it is not a California corporation, Dkt. No. 43 at 16, it provides no support for this interpretation.  As already explained above, Defendant overreads *Sullivan* in suggesting that the California Supreme Court has somehow foreclosed the application of California law to non-California corporations.

### ii. Dismissal or Remand

In her opposition brief, Dkt. No. 58 at 23–24, and separate motion to remand, Dkt. No. 58, Plaintiff asks the Court to remand the UCL claim back to state court rather than dismiss it. The Court has previously addressed this issue, and continues to find that dismissal without prejudice, as opposed to remand, is the appropriate course of action. *See Hunter v. FCA US LLC*, No. 22-CV-06777-HSG, 2023 WL 4828013, at *4, & n.4 (N.D. Cal. July 27, 2023). The Court therefore **DENIES** Plaintiff's motion to remand. Dkt. No. 58.

## IV. CONCLUSION

The Court **GRANTS** the motion for summary judgment only as to Plaintiff's UCL claim, and otherwise **DENIES** the motion for summary judgment. Dkt. No. 43. The Court also **DENIES** the motion to remand, Dkt. No. 58, and **DISMISSES** the UCL claim without prejudice to refiling in state court.

However, although the Court finds that summary judgment cannot be granted as to Plaintiff's Labor Code violations on this record, whether—and to what extent—California law applies to Plaintiff's claims remains the critical threshold question in this case. It is not clear whether, in light of this order, there are any outstanding factual disputes that must be addressed before the Court can conclusively evaluate whether California law applies. At least for purposes of this motion for summary judgment, for example, Defendant assumed Plaintiff's time records to be true. *See* Miller Decl. at ¶ 2. In any event, the Court is not inclined to postpone determination of whether California law applies until trial. Rather, the Court believes this is the unusual case in which a second motion for summary judgment is warranted. The parties should be prepared to provide very specific claim-by-claim analyses consistent with what the California Supreme Court and Ninth Circuit have done in *Sullivan*, *Ward*, and *Bernstein*. This should include a detailed discussion, not only of the language of the relevant California law, but of its legislative history and any underlying policy considerations. To the extent Plaintiff believes any California laws apply to partial days that she spent working in California, this too must be briefed in similar detail. In short, the parties must both "show their work."

To ensure adequate time for the parties to prepare these filings and for the Court to

1  consider them, the Court **VACATES** the pretrial conference and hearing on the motions in limine,

2  currently scheduled for March 11, 2025, at 3:00 p.m. and **VACATES** the jury trial, currently set to

3  begin on March 24, 2025.  The Court instead **SETS** a case management conference on March 18,

4  2025, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of

5  the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.

6  The parties are further **DIRECTED** to file a joint case management statement by March 11, 2025.

7  The joint case management statement should discuss how to expeditiously move this case forward,

8  including a briefing schedule for the renewed motion for summary judgment.

9      **IT IS SO ORDERED.**

10  Dated: 3/4/2025

                    HAYWOOD S. GILLIAM, JR.
                    United States District Judge