United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PENNY BOURGEOIS,

Plaintiff,

v.

PENTEC HEALTH, INC.,

Defendant.

Case No. 23-cv-06375-HSG

**ORDER REGARDING SUPPLEMENTAL FILINGS AND SETTING FURTHER CASE MANAGEMENT CONFERENCE**

The Court held a three-day bench trial in this employment case from August 5, 2025, to August 7, 2025. At the conclusion of the trial, the Court indicated that given the complexity of the case and the interconnected legal issues, the Court would require the parties to supplement the record with additional information, particularly related to the parties' respective damages calculations. Below the Court provides its impressions from the trial to the extent necessary for the parties to provide more granular calculations. The Court also anticipates soliciting amended proposed findings of fact and conclusion of law.

**California Law.** As discussed at length in the Court's summary judgment order and in the parties' proposed findings of fact and conclusions of law, the critical dispute between the parties is whether California law applies to Plaintiff Penny Bourgeois' claims. Plaintiff argues that California law should apply where the majority of her work or work-related travel occurred in California. *See, e.g.*, Dkt. No. 122 at 9–12. Defendant Pentec Health, Inc., for its part, urges that either Pennsylvania law (where Pentec is headquartered) or Texas law (where Plaintiff resides) should control. *See, e.g.*, Dkt. No. 121 at 1–3. Unlike California law, neither Texas nor Pennsylvania provide for daily overtime, and only Pennsylvania provides for weekly overtime, for nurses. *See* 40 Tex. Admin. Code § 821.6(b) ("[T]he [Texas Workforce] Commission shall look

to the Fair Labor Standards Act (FLSA)" and its accompanying regulations in determining an employee's entitlement to overtime pay); 29 U.S.C. § 213(a)(1) (exempting from overtime under FLSA "any employee employed in a bona fide executive, administrative, or professional capacity"); 43 Pa. Stat. Ann. § 333.104(c) ("[N]o pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek."). Similarly, Texas does not provide for any meal periods or rest periods, and Pennsylvania only provides breaks for certain minors. *See* 43 Pa. Stat. Ann. § 40.3(a). Because there is a difference in the relevant laws, the Court must "examine[] each jurisdiction's interest in the application of its own laws under the circumstances of the particular case to determine whether a true conflict exists," and if there is a conflict, "determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state . . . ." *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1202–06 (2011) (applying governmental interest analysis) (quotations omitted) (alterations in original).

As the Court previously explained, whether and to what extent California law applies is a fact-intensive inquiry that turns on the nature and scope of Plaintiff's work in California during the relevant timeframe. *See* Dkt. No. 92. The Court noted in its summary judgment order that this case "may approach the outer bounds of when California law could apply, since it involves nonresident employees, working for nonresident employers, who are only temporarily in California for days at a time." *See id.* at 8. Still, given the evidence as presented at trial, the Court is inclined to find that California law applies.[1]

---

[1] The cases Defendant cites in support of its assertion that Texas or Pennsylvania law should apply are inapposite. In *Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 721 (S.D. Tex. 1996), for example, the district court applied choice-of-law principles to determine whether Texas or Mexico law should apply to an employment dispute in which the employee worked at a plant in Monterey, Mexico. In finding that Texas law should apply, the court explained that "a United States corporation, recruited [plaintiff], a United States citizen, to work in its Monterey operations," and the plaintiff "was compensated in United States currency deposited in a United States bank account and he was subjected to both United States federal income tax and social security taxes." *Id.* Likewise, in *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 630–32 (E.D. Pa. 2009), the district court concluded that Pennsylvania law applied to an employee who worked only partly in Pennsylvania but resided in Ireland because the employee had ongoing obligations in Pennsylvania, was supervised in the state, and "could be without a forum for his wage claim" because "there is clearly no parallel state wage act under which he could seek protection." *See id.* at 632. These cases offer no insight into whether Texas or Pennsylvania has a strong interest in applying its laws to a traveling nurse like Plaintiff, or whether such an interest eclipses California's.

Defendant argues that if California law applies at all, it is only as to full days or full weeks worked in California. *See* Dkt. No. 121 at 4–6. In other words, Defendant urges that it need not pay daily or weekly overtime if Plaintiff worked out of state for part of that day or part of that week. *Id.* Notwithstanding any leanings the Court may have expressed at summary judgment, having heard the evidence the Court is not inclined to agree with Defendant's proposed limitation. This would undermine the protections offered under California law and incentivize employer gamesmanship. *See Sullivan*, 51 Cal. 4th at 1198 ("[T]he [California] overtime laws serve important public policy goals, such as protecting the health and safety of workers and the general public, protecting employees in a relatively weak bargaining position from the evils associated with overwork, and expanding the job market by giving employers an economic incentive to spread employment throughout the workforce."); *cf.* Cal. Lab. Code § 510(a) ("*Any work* in excess of eight hours in one workday and . . . 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay . . . ." (emphasis added)). Under Defendant's proposal, Plaintiff could work more than 8 hours in a day and more than 40 hours in a week without receiving any overtime pay, as long as she worked no more than 8 hours a day or 40 hours a week in California. Similarly, Plaintiff could work continuously without receiving any rest or meal break, as long as some of her time was spent outside of California. *See Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1142 (9th Cir. 2021) ("Like overtime pay, meal and rest break requirements are designed to prevent 'the evils associated with overwork,' mandating that employers treat employees humanely even when employees have been unable to bargain for that contractual right.").

Defendant points out that in *Sullivan*, the California Supreme Court acknowledged concerns about the extraterritorial application of California employment laws "to nonresident employees of out-of-state businesses who *enter California temporarily during the course of the workday*." *See Sullivan*, 51 Cal. 4th at 1199 (cleaned up) (emphasis in original). The court sidestepped such concerns, however, noting that the plaintiffs there "claim[ed] overtime only for *entire days and weeks* worked in California." *Id.* (emphasis in original). Defendant argues that *Sullivan* precludes the application of California's overtime laws to "partial" days or weeks spent in

United States District Court
Northern District of California

the state. But the California Supreme Court explicitly rejected such a broad interpretation of *Sullivan*. *See Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 751 (2020) (noting that the court did not "hold [] that California's employment laws always apply to every minute or hour of work performed in this state or that these laws never apply when work is performed in part out of state").

This is not a case where Plaintiff only entered California "temporarily during the course of the workday." Rather, Plaintiff regularly traveled to, worked in, and traveled from California based on the assignments that Defendant gave her as a registered nurse "traveler." And as part of her role, she had to be licensed in California, and she prepped for and treated patients in California. Although the Court discusses Plaintiff's travel time more fully below, the Court also finds it relevant that much of Plaintiff's "out of state" work time during the relevant timeframe was travel into and out of the state. Accordingly, the Court is inclined to apply California law for all days and weeks in which Plaintiff spent the majority of her time in California, even if part of that time Plaintiff was out-of-state. *Cf. Ward*, 9 Cal. 5th at 749–56 (finding Cal. Lab. Code § 226 itemized wage statements apply to workers who "perform the majority of their work in California" or "are based for work purposes in California"). Thus, the Court would consider all daily and weekly hours that Plaintiff worked, regardless of whether some were performed outside of California, when determining the net overtime hours that Plaintiff worked.[2]

The Court recognizes that determining whether Plaintiff worked a majority of her time in California on any given day or in any given week is complex and turns on how to calculate Plaintiff's hours worked. To this end, the Court discusses some of the other major disputes raised by the parties.

**Travel Time.** The parties dispute whether Plaintiff's travel time into, out of, and within California is compensable. The Court is likely to conclude that at least some of Plaintiff's travel is compensable. As an initial matter, California law looks to the FLSA when determining the

[2] Consistent with *Ward*, Defendant appears to agree that "California law applies to Plaintiff's wage statement claim for the pay periods she performed the majority of her work in California." *See* Dkt. No. 121 at 6.

number of hours worked for healthcare employees such as Plaintiff: "Within the health care industry, the term 'hours worked' means the time during which an employee is suffered or permitted to work for the employer, whether or not required to do so, as interpreted in accordance with the provisions of the Fair Labor Standards Act." *See* Cal. Code Regs. tit. 8, § 11050, subd. 2(M).

Under the FLSA, employees are not entitled to compensation for (1) traveling to and from "the actual place of performance of *the principal activity or activities* which such employee is employed to perform" or (2) "activities which are preliminary to or postliminary to said *principal activity or activities*"). *See* 29 U.S.C. § 254(a) (emphasis added); *see also* 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime."); 29 C.F.R. § 785.39 ("As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile."). An activity is compensable as a "principal" activity if it is an "integral part of a principal activity." 29 C.F.R. § 790.8(b), (c). As the Supreme Court has further clarified, "[a]n activity is [] integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014).

Here, testimony at trial indicated that Plaintiff's travel—including numerous flights into and out of California during the relevant timeframe—was integral to her role as a "travel nurse" and was thus compensable. Defendant controlled Plaintiff's assignments, Plaintiff was routinely sent across the country based on the company's need for nurses to provide in-home patient care, Plaintiff largely traveled during her normal business hours, and her freedom to engage in other activities was curtailed during this travel time. In a similar context, the Third Circuit considered Home Health Aides ("HHAs"), and explained that they were "hired to travel and provide care to clients where they reside, rather than meeting them in hospitals or clinics." *See Sec'y United States Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 158 (3d Cir. 2025). The

court aptly explained that "[b]ecause the HHAs cannot apparate,[3] the particular circumstances of this case and common sense dictate that travel is integral and indispensable to providing in-home healthcare." *Id.* (quotations omitted); *see also Walters v. Pro. Lab. Grp., LLC*, 120 F.4th 546, 549–52 (7th Cir. 2024) (traveling tradesmen entitled to compensation for travel time to remote work sites).

Even Defendant's own authority indicates that some compensation may be appropriate for travel between home and a work site when "the time involved is extraordinary." *See Opinion Letter Fair Labor Standards Act (FLSA)*, 1999 WL 1002360, at *1. The example the FLSA provided in an opinion letter was a four-hour commute from a field engineer's home to the home of a customer. *Id.* at *2 (citing 29 C.F.R. § 785.37). The FLSA considered this "extraordinary." Similarly, the FLSA considered "customer training consultants" who "typically remain at a customer site for three or four weeks," and may travel to the job site by airline and in company cars. *Id.* The FLSA stated that "[w]e would not take exception to a practice that treats one hour of commuting time as non-compensable home-to-work travel, and that treats all travel time in excess of that amount as hours worked." *Id.* Under this rubric, the time involved in flying across the country seems like it readily would be considered "extraordinary."[4] The Court is still considering how to treat Plaintiff's travel from her hotel to the first patient and from the last patient to the hotel on days she worked completely in California, though this appears to be a far smaller component of the time at issue here.

**Prep Time.** The parties dispute whether Plaintiff's "prep" time should constitute hours worked. Under the FLSA, "[e]ven activities required by the employer and for the employer's

[3] The Third Circuit did not define the term "apparate," and it does not appear to be listed in Merriam-Webster or the Oxford English Dictionary. However, fans of the Harry Potter franchise will understand that "apparition" is a form of magical transportation, and to "apparate" means to appear magically or teleport from one place to another. *See* J.K. Rowling, *Harry Potter and the Goblet of Fire* 66 (2000) ("Harry knew that Apparating meant disappearing from one place and reappearing almost instantly in another . . . .").

[4] During trial, Plaintiff also testified that she worked some of the time she was traveling by plane to California. Time when she was actually working, and not just traveling, is likely compensable too. *See Rutti v. Lojack Corp.*, 596 F.3d 1046, 1055 (9th Cir. 2010). ("[T]he term 'principal activities' is to be liberally construed to include any work of consequence performed for an employer no matter when the work is performed.") (quotation omitted).

benefit are 'preliminary' or 'postliminary' if not integral and indispensable to 'the productive work that the employee is employed to perform.'" *Balestrieri v. Menlo Park Fire Prot. Dist.*, 800 F.3d 1094, 1101 (9th Cir. 2015) (quoting *Integrity Staffing*, 574 U.S. at 34). Here, Plaintiff is likely entitled to compensation for at least some of the time she spent preparing for her patient appointments each day, including the time she spent charting and picking up medications. Plaintiff's testimony at trial indicates that this work was critical to caring for her patients, and often done back at her hotel room either in the morning before her appointments or in the evenings after seeing patients. However, to the extent Plaintiff testified about time spent loading and unloading her vehicle or mapping her routes, such logistical prep work is either not a principal activity because it is several steps removed from treating patients, or alternatively is *de minimis*. *See Balestrieri*, 800 F.3d at 1096–97, 1101 (gathering and transporting firefighting turnout gear when working visiting shifts at other stations found to be "preliminary" to firefighting activity, such that time was not compensable); *Rutti*, 596 F.3d at 1057 (concluding that "receiving, mapping, and prioritizing jobs and routes for assignment" were related to non-compensable commute time and thus were non-compensable preliminary activities).

**Administrative Exemption.** Defendant argues that the "Administrative Exemption" under California law exempts Plaintiff from overtime and meal and rest period requirements while she was engaged in precepting duties (*i.e.*, training other nurses). *See* IWC Wage Order 4, § 1(A)(3)(f) (2001) ("[R]egistered nurses employed to engage in the practice of nursing[] shall not be considered exempt professional employees . . . unless they individually meet the criteria established for exemption as executive or administrative employees."). Under the Administrative Exemption, "[a] person employed in an administrative capacity means any employee . . . [w]hose duties and responsibilities involve . . . *[t]he performance of office or non-manual work directly related to management policies or general business operations* of his/her employer or his/her employer's customers" who also "customarily and regularly exercises discretion and independent judgment . . . ."). IWC Wage Order 4, § 1(A)(2) (2001) (defining "Administrative Exemption" with multi-factor test) (emphasis added).

The Court finds the application of this exemption is a close call, but the Court is inclined to

United States District Court
Northern District of California

find that the Administrative Exemption applies. During the trial Plaintiff testified that her precepting duties still primarily involved patient care. As such, she suggests that her duties cannot fairly be considered "office or non-manual work directly related to management policies or general business operations." However, that Plaintiff still cared for patients is not necessarily dispositive. The California Court of Appeal explained that "identical tasks may be 'exempt' or 'nonexempt' based on the purpose they serve within the organization or department." *See Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 822 (Cal. Ct. App. 2013). "Understanding the [employee's] purpose in engaging in such tasks, or a task's role in the work of the organization, is critical to the task's proper categorization." *Id.* Accordingly, "[a] task performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department' is exempt, even though the identical task performed for a different, nonmanagerial reason would be nonexempt." *Id.* Here too, there was evidence at trial that Plaintiff's patient census was formally transferred to her preceptee during precepting, and Plaintiff was largely observing and providing feedback to the preceptee. Plaintiff also testified to the significant amount of paperwork involved in precepting, including reviewing preceptees and preparing training materials and progress reports. Plaintiff also appeared to have wide latitude in how she performed her work and trained preceptees, and was not supervised or managed on a day-to-day basis by someone else while training.

**Meal & Rest Breaks.** Plaintiff contends that until December 2022, Defendant never informed her that she was entitled to regular meal and rest breaks. She further argues that the demands of her job, including the volume of work and travel requirements, prevented her from taking regular breaks. However, based on the evidence introduced at trial, the Court is not likely to find that Plaintiff was denied meal or rest breaks. The California Supreme Court has explained that to satisfy its meal period obligations, "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1034 (2012) (Cal. Lab. Code § 512(a)); *see also* Cal. Lab. Code § 226.7(b). And "[w]hat will suffice may vary from industry to industry." *Brinker*, 53 Cal. 4th at 1040.

Here, the evidence indicates that Plaintiff had control over her schedule such that she could—and did—schedule her own breaks. The Court heard testimony about her taking breaks and meals, which reflected that she had some control over the logistics and pace of her day. It doesn't necessarily follow that because Plaintiff often submitted paperwork late at night that she must have missed meal or rest breaks throughout the day, or that Defendant should have known that Plaintiff missed such breaks. Nor was any evidence presented that Defendant pressured Plaintiff to forego meal and rest breaks.

**Settlement Offers.** Lastly, the Court is not likely to find that Defendant made qualifying settlement offers to Plaintiff under California Code of Civil Procedure § 998 or Federal Rule of Civil Procedure 68. For example, Defendant's 2023 settlement offer under § 998 was made before the parties engaged in discovery and before Plaintiff could reasonably be expected to know whether the offer was reasonable. *See Nelson v. Anderson*, 72 Cal. App. 4th 111, 135 (1999), *as modified on denial of reh'g* (June 14, 1999) ("[T]he section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one."). The need for discovery seems especially acute here where Defendant did not keep time records and Plaintiff had to reconstruct her time during the relevant timeframe. Similarly, it is not clear that Defendant's 2024 settlement offer meets the strict requirements of Rule 68 where it did not provide for entry of judgment against Defendant, and instead sought a dismissal with prejudice of all Plaintiff's claims. Although the Court invited supplemental briefing on this issue, the parties submitted simultaneous briefs, *see* Dkt. Nos. 113 and 114, so were not able to respond to each other's arguments.

* * *

With this guidance, the Court anticipates the parties can provide more tailored findings of fact and conclusions of law, including more targeted damages calculations. Additionally, the parties previously attended a settlement conference with Judge Westmore before the trial, and indicated that they may wish to return to Judge Westmore before the Court issues final findings of fact and conclusions of law. And the Court is aware that the Alameda Superior Court has stayed Plaintiff's unfair competition law claim pending resolution of this matter. Dkt. No. 147. The Court therefore **SETS** a further case management conference on September 22, 2026, at 2:00 p.m.

United States District Court
Northern District of California

The conference will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities. The parties shall meet and confer and file a joint status report, addressing the timing and form of the supplemental filings and the status of any renewed settlement discussions. The parties shall file their joint status report by September 15, 2026.

**IT IS SO ORDERED.**

Dated: 8/28/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge